IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

LAWRENCE OSBORNE, et al.

                Plaintiffs,

v.                                                    CIVIL ACTION NO. 1:11-cv-00070

KAREN LONG, et al.

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Doug Workman's Motion to Dismiss Plaintiffs' Complaint [Docket 8]. For the reasons that follow, the Court **GRANTS** the motion to dismiss.

*I. BACKGROUND*

On January 28, 2011, Plaintiffs, Lawrence and Denise Osborne,[1] sued the Defendants alleging, in Claim One, a violation of their civil rights as provided by 42 U.S.C. § 1983 and, in Claim Two, state law theories of "civil battery, willful and wanton conduct, assault, brutality and outrageous conduct. . . ." (Docket 1.) Defendant Karen Long is alleged to be a United States Marshal and Defendant Doug Workman, a West Virginia parole officer. (*Id.* at ¶¶ 6-7.) A third individual,

---

[1] With the exception of the case style and the opening two paragraphs, the Complaint refers to a singular plaintiff throughout the remaining twenty-nine paragraphs. Although Paragraph 10 states that the terms "Defendants" refers to all Defendants "individually and collectively," no such explanation is made for the Plaintiffs. Consequently, it is unclear whether there is really more than one plaintiff and, if so, who. Because this defect has not been raised by any Defendant, the Court leaves this issue for another day. For the purposes of this Opinion, however, the Court will refer to the Plaintiffs collectively unless otherwise indicated.

a John Doe, is alleged to be a correctional officer who accompanied Defendants Long and Workman. (*Id.* at ¶ 8.)

Plaintiffs' claims center on an incident that is alleged to have occurred at the Plaintiffs' Athens, West Virginia residence on January 29, 2009. (*Id.* at ¶ 12.) The Complaint states that the Defendants went to the Plaintiffs' residence looking for Plaintiff Lawrence Osborne's daughter, Melissa Coleman. As alleged, Plaintiff Lawrence Osborne, a disabled individual, advised the Defendants that his daughter was not staying there and asked the Defendants if they had a warrant. The Complaint then states with no elaboration, "They did not." Defendant Long then "grabbed Plaintiff by the arm, attempted to hand cuff him and forced him into the residence, without a warrant, injuring Plaintiff Lawrence Osbornes' right shoulder." "While in the residence," Defendants confiscated "both of Plaintiff's cell phones" and refused to let Plaintiff Denise Osborne use the restroom while Defendants were in the home. Plaintiffs allege that this conduct violated their Fourteenth Amendment rights and constituted "civil battery." The last paragraph of this "Factual Allegations" section of the Complaint concludes: "Entry into the Plaintiff's [singular] residence, without a warrant constitutes a violation of Plaintiff's [singular] Constitutional Fourth Amendment protection against illegal searches and seizures."

On June 15, 2011, Defendant Workman filed his Answer to the Complaint. (Docket 6.) There, Defendant Workman admitted he is a West Virginia parole officer, that on January 29, 2009, he and the other defendants went to the Osborne residence where they met Plaintiff Lawrence Osborne "out front." (*Id.* at ¶ 12.) Defendant Workman further admitted that the Defendants asked Plaintiff Lawrence Osborne if Ms. Coleman was staying with them. Defendant Workman stated that Ms. Coleman's residence of record was her parents' residence and that the Defendants had an active

2

Department of Corrections warrant for Ms. Coleman. Defendant Workman denied Plaintiffs' allegations concerning Defendant Long's physical interaction with Plaintiff Osborne. He also denied the allegations concerning Defendants' refusal to permit Plaintiff Denise Osborne to use the restroom and their allegation that the Defendants confiscated both cell phones. Defendant Workman alleges that Plaintiff Lawrence Osborne consented to Defendants' entry into the home. Defendant Workman asserts twenty-seven defenses, including failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) and absolute and qualified immunity.

On July 14, 2011, Defendant Doug Workman moved to dismiss Plaintiffs' claims pursuant to Fed.R.Civ.P. 12(b)(6) for failing to state a claim against him [Docket 8] and filed a supporting memorandum (Docket 9). Defendant Workman argues that Plaintiffs' § 1983 claim (Claim One) against him in his official capacity fails because he is not a "person" within the meaning of § 1983; that he is entitled to qualified immunity under the Eleventh Amendment of the Constitution; and that Plaintiffs' have not alleged sufficient facts to state a claim for a violation Plaintiffs' Fourteenth Amendment rights. Defendant Workman further argues that Plaintiffs' state law claim (Claim Two) must be dismissed because the Complaint fails to state facts sufficient to support a state law claim of battery or outrageous conduct. (Docket 9.)

Despite the passage of more than seven months, and in contravention of this Court's local rules, Plaintiffs have not filed any response to Defendant Workman's Motion to Dismiss.[2]

---

[2] *See* S.D.W. Va. L.R. Civ. P. 7.1(a)(7) requiring responses to motions to be filed within fourteen days from the date of service of the motion.

## II. LEGAL STANDARDS

A pleading that states a claim for relief must, *inter alia*, contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Allegations "must be simple, concise, and direct" and "no technical form is required." Fed.R.Civ.P. 8(d)(1). The question of whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in Rule 8 (providing general rules of pleading), Rule 9 (providing rules for pleading special matters), Rule 10 (specifying pleading form), Rule 11 (requiring the signing of a pleading and stating its significance), and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

A complaint offering " 'naked assertion[s]' devoid of 'further factual enhancement' does not satisfy Rule 8's pleading standard" *Ashcroft v. Iqbal,* 556 U.S. 662, ___, 129 S.Ct. 1937, 1949 (2009). In *Iqbal*, the Supreme Court stated

> [T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements.

*Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 266 (1986)).

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). While "the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues

for trial and for early disposition of inappropriate complaints." *Francis*, 588 F.3d at 192 (citing 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1202 (3d ed. 2004)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The plausibility standard is not akin to a probability requirement, but does require a plaintiff to demonstrate more than "a sheer possibility that a defendant has acted unlawfully." *Francis*, 588 F. 3d at 193 (quoting *Twombly,* 550 U.S. at 570). The standard requires the plaintiff to articulate facts, when accepted as true, to "state a claim to relief *that is plausible on its face." Id.* A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1949. In other words, the factual allegations (taken as true) must "permit the court to infer more than the mere possibility of misconduct." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id*. (citing *Twombly*). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. While a court must accept the material facts alleged in the complaint as true, *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999), statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient

to state a claim. *Iqbal*, 556 U.S. at \_\_\_, 129 S.Ct. at 1940. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Id.* (internal quotation marks omitted); *see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. \_\_\_, 129 S.Ct. at 1950..

In reviewing the sufficiency of a complaint a court may consider sources beyond the four corners of the complaint, including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" or sources "whose accuracy cannot reasonably be questioned." *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011) (citation omitted).

### III. DISCUSSION

Defendant Workman advances three arguments for dismissal of Plaintiffs' claims against him: (1) Plaintiffs' § 1983 claim (Claim One) fails because he, having acted in his official capacity, is not a "person" within the meaning of § 1983 and is entitled to qualified immunity under the Eleventh Amendment of the Constitution; (2) Plaintiffs' § 1983 claim (Claim One) fails because "Plaintiffs have failed to state a claim [against him in individual capacity] which would overcome the privilege of qualified immunity and have failed to state a claim" for a violation of Plaintiffs' Fourteenth Amendment rights; and (3) Plaintiffs' state law claim (Claim Two) must be dismissed because the Complaint fails to state facts sufficient to support a state law claim of civil battery or outrageous conduct. (Docket 9.)

> A. *Plaintiffs' § 1983 claim against Defendant Workman must be dismissed because the Eleventh Amendment bars suit against Defendant Workman, who Plaintiffs alleged acted in his official capacity as a state parole officer*

Under federal law, a cause of action for civil rights violations by government officials is provided by 42 U.S.C. § 1983. This statute provides in pertinent part as follows:

**§ 1983. Civil action for deprivation of rights**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

A federal civil rights claim based upon § 1983 has two essential elements: "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

The Eleventh Amendment, however, generally bars a § 1983 claim against a defendant who is alleged to have acted in his official capacity. It is well-settled that "neither a State nor its officials acting in their official capacities are "persons" under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)) ("a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Giancola v. State of W. Va. Dept. of Public Safety*, 830 F.2d 547, 552 (4th Cir. 1987) (affirming summary judgment on alternative basis in favor of West Virginia State Police Troopers because Eleventh Amendment barred § 1983 claims); *Fridley v. W. Va. Dept. of Corr.*, No. 3:08-CV-111, 2009 WL 1097529 * 2 (N.D.W. Va. April 22, 2009) (Bailey, J.) (citing *Giancola*) ("The State of West Virginia and its components have been held to be entitled to Eleventh

Amendment immunity."); *Meadows v. Huttonsville Corr. Center*, F. Supp. 684, 685 (N.D.W. Va. 1992) (Maxwell, C.J.) (citing *Will*, 491 U.S. at 71) ("Litigants are not provided a federal forum by § 1983 when they seek a remedy against a state for alleged deprivation of civil liberties. The Eleventh Amendment bars such suits unless the state has waived its immunity. The same principle applies to suits brought against "appendages" of the State, such as state agencies.").

In light of these straightforward principles of law, Plaintiffs' § 1983 claims against Defendant Workman must be dismissed because Plaintiffs alleged he acted in his capacity as a West Virginia parole officer and, therefore, is simply not a "person" within the meaning of 42 U.S.C. § 1983. Accordingly, the Court **GRANTS** Defendant Workman's motion to dismiss Plaintiffs' § 1983 claim against Defendant Workman in his official capacity.

   B. *Plaintiffs fail to state a § 1983 claim against Defendant Workman*

Defendant Workman contends that he is also entitled to dismissal on the grounds that Plaintiffs failed to state a § 1983 claim against him in his individual capacity for a violation of Plaintiffs' Fourteenth Amendment rights. (Docket 9.) For the reasons that follow, the Court finds that Plaintiffs' § 1983 claim against Defendant Workman must be dismissed because Plaintiffs failed to plead sufficient facts establishing Defendant Workman's liability.

   *1. Plaintiffs' Allegations*

In the prefatory paragraphs of their Complaint, Plaintiffs state that this action "arises as a result of the unlawful use of unreasonable force against" the Plaintiffs by the Defendants. They allege that *Defendant Long* —not Defendant Workman— "participated in the conduct alleged herein including, but not limited to, the use of force against Plaintiff." They allege in Paragraph 12 that *Defendant Long* forced Plaintiff Lawrence Osborne into the house. They do not allege that Defendant

Workman assisted Defendant Long in this conduct or participated in or encouraged it in any way. Paragraph 12 concludes: "While in the house, the Defendants refused to let Plaintiff Denise Osborne use the restroom and they confiscated both of Plaintiff's [singular in original] cell phones." Paragraph 14 states that Plaintiff Lawrence Osborne "was not posing any risk to a [sic] Defendant Karen Long which would justify Defendant's use of force." There is no allegation that Plaintiff Lawrence Osborne or Denise Osborne did not pose a risk to Defendant Workman or the John Doe Defendant. Paragraph 15 alleges that "use of force was in excess of that required to be used in a good faith effort to maintain and restore discipline and was used maliciously and sadistically for the very purpose of causing harm," was "objectively unreasonable under the totality of the circumstances," violated Plaintiffs' Fourteenth Amendment rights, and is actionable pursuant to 42 U.S.C. § 1983.[3] Paragraph 17 (the concluding paragraph of the "Factual Allegations" section of the Complaint) states: "Entry into the Plaintiff's residence, without a warrant constitutes a violation of Plaintiff's Constitutional Fourth Amendment protection against illegal searches and seizures."

Following these prefatory allegations, Plaintiffs allege two claims: a § 1983 claim and a state law tort claim. Each claim incorporates by reference the prefatory allegations. The § 1983 claim is titled, "Use of Unreasonable and Excessive Force in violation of the Fourteenth Amendment, 42 U.S.C. § 1983." This claim asserts that "Plaintiff" had a constitutional right to be free from excessive force and that "each Defendant knew, or should have known, that this right was clearly established under federal law." Plaintiffs assert that the use of force "by *Defendant Karen Long* as

---

[3] As noted *infra*, this legal standard has no applicability here. In analyzing an excessive force claim under the Eighth Amendment, the subjective motivations of the individual officers are of central importance. *Graham v. Connor*, 490 U.S. 386, 398 (1989). In the Fourth Amendment context, the inquiry centers on the objective reasonableness of the officers' conduct and subjective concepts like "malice" and "sadism" have no proper role in this analysis. *Id*. at 399.

referenced herein violated Plaintiff's aforementioned constitutional rights, was in excess of that required to be used in a good faith effort to maintain and restore discipline, was used maliciously and sadistically for the very purpose of causing harm . . . ." (Docket 1, ¶ 22) (emphasis added). This claim ends with an assertion that the "objectively unreasonable use of force by Defendants" caused "Plaintiff" [singular in original] to suffer "injuries, damages, and losses as a result of the Defendant's violations of Plaintiff's [singular in original] federally protected right to be free from unreasonable force." No where in this claim—or elsewhere in the Complaint—are there any *factual* allegations to support the contention that *Defendant Workman* used, or condoned the use of, unreasonable force against either of the Plaintiffs.[4]

Plaintiffs' second claim is titled "State Law Claim Civil Battery/Outrageous Conduct." The scant factual content in this claim also centers on Defendant Long's alleged conduct. Paragraph 26 states that the "conduct of Defendant Karen Long as stated herein still [sic] constitutes civil battery, willful and wanton conduct, assault, brutality and outrageous conduct against Plaintiff, in violation of West Virginia law." The remaining allegations offer no further facts describing Defendants' conduct. Rather, the claim alleges that the Defendants are not immune from liability and that as "direct and proximate result of said conduct of Defendant," Plaintiff (singular) has sustained medical costs, humiliation, pain and suffering, loss of enjoyment of life, and emotional distress.

    2.    *Analysis*

Plaintiffs' Complaint fails to allege any facts stating a plausible claim that Defendant Workman is liable under Plaintiffs' § 1983 excessive force theory. Indeed, Plaintiffs' conclusory

---

[4] Nor do Plaintiffs allege a failure to intervene theory of liability. *See, e.g.*, *Jackson v. Pantazes*, 810 F.2d 426 (4th Cir. 1987).

allegations concerning Defendant Workman's conduct are reminiscent of the deficient pleading in *Iqbal*. In that case, respondent Iqbal filed a *Bivens* action against a variety of federal officials, including the former United States Attorney General, John Ashcroft, and the former Director of the Federal Bureau of Investigation (FBI), Robert Mueller (petitioners). *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Iqbal's complaint alleged, in pertinent part, that: (1) the petitioners designated Iqbal as a person of high interest on account of his race, religion, or national origin in contravention of his First and Fifth Amendment rights; (2) under the direction of Mueller, the FBI arrested and detained thousands of Arab Muslim men as a part of the FBI's investigation of the September 11, 2001, attack on the United States; (3) petitioners approved of the policy of holding these detainees in highly restrictive conditions until they were cleared; (4) petitioners knew of, condoned and willfully and maliciously agreed to subject Iqbal to harsh conditions of confinement as a matter of policy solely on account of his religion, race and national origin and for no legitimate penological interest; and (5) Ashcroft was the "principal architect" of the detainee policy and Mueller was "instrumental" in its adoption and implementation. *Id.* at 1944.

The Supreme Court concluded that Iqbal's complaint failed to nudge his claims of invidious discrimination across the line from conceivable to plausible. *Id.* at 1950-51. The Court found that Iqbal's allegations that the petitioners knew of, condoned, and willfully and maliciously agreed to subject him to harsh conditions as a matter of policy solely on account of his religion, race and national origin, as well as the allegations that Ashcroft was the principal architect and Mueller was instrumental in adopting and implementing the detainee policy, were "bare assertions" amounting to nothing more than a formulaic recitation of the elements of a constitutional discrimination claim.

*Id.* (quoting *Twombly*, 550 U.S. at 555). The Court found that such conclusory allegations were not entitled to an assumption of truth. *Id.* Next, the Court examined the plausibility of Iqbal's allegations. The Court accepted as true Iqbal's allegations that the FBI arrested and detained thousands of Arab Muslim men in connection with its September 11 investigation and that the detainees were held in highly restrictive conditions of confinement until the FBI cleared them. The Court found that these allegations, taken as true, were *consistent with* the petitioners' purposefully designating detainees as "of high interest" on account of prohibited factors such as race. *Id.* The Court, however, found that these allegations *did not plausibly establish* this purpose in light of "more likely explanations." *Id.* The Court reasoned:

> The September 11 attacks were perpetrated by 19 Arab Muslim hijackers who counted themselves members in good standing of al Qaeda, an Islamic fundamentalist group. Al Qaeda was headed by another Arab Muslim—Osama bin Laden—and composed in large part of his Arab Muslim disciples. It should come as no surprise that a legitimate policy directing law enforcement to arrest and detain individuals because of their suspected link to the attacks would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims. On the facts respondent alleges the arrests Mueller oversaw were likely lawful and justified by his nondiscriminatory intent to detain aliens who were illegally present in the United States and who had potential connections to those who committed terrorist acts. As between that "obvious alternative explanation" for the arrests . . . and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion.

*Id.* at 1951-52. The Supreme Court further found that Iqbal's only factual allegation against petitioners accused them of adopting a policy approving "restrictive conditions of confinement" for post–September–11 detainees until they were " 'cleared' by the FBI." *Id.* Accepting that allegation as true, the Court found that Iqbal did not allege or intimate that petitioners purposefully housed detainees in a highly restrictive facility due to their race, religion or other prohibited factor. *Id*

Because Iqbal's complaint failed to show *facts* plausibly showing that the petitioners purposefully adopted a policy of classifying post-September 11 detainees as "of high interest" because of their race, religion, or national origin, the Court found that the complaint failed to meet Rule 8's pleading standards. *Id.*

Here, as in *Iqbal*, Plaintiffs' § 1983 allegations against Defendant Workman fall short of Rule 8's minimal pleading requirements. The Fourth Amendment states, "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches . . . shall not be violated." U.S. Const . amend. IV. When inquiring into the reasonableness of excessive force used during a search, an objective approach should be used to make this determination. *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Terry v. Ohio*, 391 U.S. 1, 21 (1968); *Rowland v. Perry*, 41 F.3d 167, 173 (4th Cir. 1994). "The better way to assess the objective reasonableness of force is to view it in full context, with an eye toward the proportionality of the force in light of all the circumstances. Artificial divisions in the sequence of events do not aid a court's evaluation of objective reasonableness." *Rowland*, 41 F.3d at 173. Thus, here, the Court must examine whether Plaintiffs' allegations establish whether the conduct was " 'objectively reasonable' in light of the facts and circumstances confronting them . . . without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

In Paragraph 1 of their Complaint, Plaintiffs state that this action "arises as a result of the unlawful use of unreasonable force against" the Plaintiffs by the Defendants. Paragraph 9 alleges that Defendant Long "participated in the conduct alleged herein including, but not limited to, the use of force against Plaintiff." Paragraph 12 alleges that Defendant Long—not Defendant Workman—forced Plaintiff Lawrence Osborne into the house. No suggestion is made that

13

Defendant Workman assisted Defendant Long or participated in or encouraged this conduct. Paragraph 12 states: "While in the house, the Defendants refused to let Plaintiff Denise Osborne use the restroom and they confiscated both of Plaintiff's cell phones." Paragraph 15 parrots a conclusory legal standard lifted from an Eighth Amendment context—not the Fourth Amendment.

Although the Complaint fails to state directly that any Defendant entered the home, one may fairly infer from these imprecise allegations that Defendant Workman did. This inference is of no moment here, however. Even if one assumes that Defendant Workman entered the residence without a warrant, Plaintiffs' legal conclusion that this conduct violated the Fourth Amendment may or may not be true. While it is elemental that absent exigent circumstances or consent, a law enforcement officer may not legally search for the subject of an arrest warrant in home of third party without first obtaining search warrant, *Steagald v. United States*, 451 U.S. 204, 216 (1981), it is also well-settled that parolees and probationers have diminished Fourth Amendment rights. *Samson v. California*, 547 U.S. 843, 846 (2006) (stating that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee and that "parolees have fewer expectations of privacy than probationers"); *see also United States v. Knights*, 534 U.S. 112, 120-21 (2001) ("Inherent in the very nature of probation is that probationers do not enjoy 'the absolute liberty to which every citizen is entitled.' Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens.") (citations omitted). Warrantless searches of a probationer's person, vehicle, and residence require reasonable suspicion, not probable cause. *United States v. Midgette*, 478 F.3d 616, 623 (4th Cir. 2007) (finding North Carolina statute that allowed warrantless searches of probationers' premises reasonable under Fourth Amendment law). Finally, the facts,

14

accepted as true, that the Defendants refused to let Plaintiff Denise Osborne use the restroom and "confiscated both of Plaintiff's [singular plaintiff in original] cell phones" and Defendant Karen Long attempted to restrain Plaintiff Lawrence Osborne, who is alleged to have a physical disability of an undescribed nature, and forced him into the house, do not, standing alone, make out a Fourth Amendment violation. "[O]fficers, when executing a search, 'may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search.'" *Ruttenberg v. Jones*, 283 F. App'x 121, 136-37 (4th Cir. 2008) (citing *Michigan v. Summers,* 452 U.S. 692, 705 (1981) (noting law enforcement's interest in detaining occupants in order to prevent risk of harm to both the police and the occupants)). In *Muehler v. Mena*, 544 U.S. 93, 98–99 (2005), the Court observed that "[i]nherent in Summers' authorization to detain an occupant of the place to be searched is the authority to use reasonable force to effectuate the detention." " 'Not every push or shove, even if it may later seem unnecessary' . . . violates the Fourth Amendment." *Graham* at 396.

As in *Iqbal*, the Court declines to accept the Plaintiffs' legal conclusions as true where, although they may be fairly construed as *consistent with* liability, they do not, when more likely explanations exist, plausibly establish constitutional violations by Defendant Workman. *See Iqbal*, at 1951. In paragraph 17, Plaintiffs allege in conclusory fashion that Defendants' entry into the home violated Plaintiffs' Fourth Amendment rights. But nowhere in the Complaint do Plaintiffs allege sufficient *facts* to support this claim. No where do Plaintiffs state that the Plaintiff Lawrence Osbornes' daughter was not a parolee under Defendant Workman's supervision, that she had not been previously living with them, that their residence had not been her residence of record with the authorities, or that Defendants did not have reason to believe she resided there. Rather, the Complaint states—perhaps with deliberate ambiguity— "Defendants asked if . . . [she] was staying

15

with them. She was not." (Docket 1 ¶ 12.) If the Plaintiffs' residence had been the residence of record of a parolee under Defendant Workman's supervision or if Defendants had reason to believe the daughter would be found within the home, then Defendant Workman may well have been authorized to enter the home without a warrant. *See, e.g., Moore v. Vega*, 371 F.3d 110, 117 (2d Cir. 2004) (finding that where defendants reasonably believed, albeit mistakenly, that they were entering the residence of an absconded parolee, qualified immunity protected them from liability); *see also* 2005 W. Va. Reg. Text 90-2 (NS) (Parolees or probationers supervised pursuant to an interstate compact shall submit to a search without warrant of his or her person, place of residency or motor vehicle by his or her parole officer for supervision purposes at any time during the parole period). As in *Iqbal* and *Twombly*, where there is an obvious, common sense, and plausible alternative explanation for Defendant Workman's conduct, coupled with the generally imprecise and frequently conclusory allegations against Defendant Workman, the Court finds that Plaintiffs' allegations fail to satisfy Rule 8.

Moreover, even if the allegation were sufficient, Defendant Workman would nonetheless be entitled to qualified immunity if he mistakenly believed in good faith that his parolee was living at that location. In resolving a government official's qualified immunity claims, a court must decide: 1) whether facts alleged or shown by the plaintiff make out a violation of a constitutional right; and 2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct; the court may exercise its sound discretion in deciding which of these two inquiries should be addressed first. *Pearson v. Callahan*, 555 U.S. at 236-37. Qualified immunity from § 1983 claims "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In *Pearson*, the Court explained

> Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

*Id.* at 231 (internal citations omitted). Qualified immunity extends to 'mere mistakes in judgment, whether the mistake is one of fact or one of law." *Butz v. Economou*, 438 U.S. 478, 507 (1978); *Miller v. Prince George's Cty.*, 475 F.3d 621, 627-28 (4th Cir. 2007) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). "The doctrine ensures that '[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.' " *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir.2008) (quoting *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992)). In the absence of any allegation by Plaintiffs that Defendant Workman's conduct with Plaintiffs was objectively unreasonable under the totality of the circumstances, Defendant Workman would likely be successful in mounting a qualified immunity defense.

In sum, as pleaded, there is no non-speculative, plausible allegation that Defendant Workman, performing his duties as a state parole officer, violated Plaintiffs' Fourth Amendment rights. Absent from the Complaint are any plausible *factual* allegation supporting Plaintiffs' flat legal conclusion that Defendant Workman's entry into Plaintiffs' home was unlawful. While it is *conceivable* that Defendant Workman had no reason to believe that Ms. Coleman did not live at that residence and entered Plaintiffs' home in reckless or intentional disregard of Plaintiffs' constitutional rights, that sheer possibility is not alleged and falls short of *Iqbal*'s plausibility standard. In

conclusion , the Court notes that its inquiry has been unaided by Plaintiffs' failure to respond to Defendant Workman's motion to dismiss as required by S.D.W. Va. LR Civ. P. 7.1(a)(7). Plaintiffs' silence is, perhaps, a concession that the § 1983 claim against Defendant Workman is unfounded.[5]

Accordingly, the Court **GRANTS** Defendant Workman's motion to dismiss Plaintiffs' § 1983 excessive force claim against Defendant Workman.

> C. *Plaintiffs' state law claim (Claim Two) must be dismissed because the Complaint fails to state facts sufficient to support the alleged state law theories of liability against Defendant Workman*

Finally, Plaintiffs' second claim alleges several tort-based theories of liability in violation of state law. (Docket 1 ¶26.) Once again, the entirety of these inartfully pleaded factual allegations centers on Defendant Long's conduct—not that of Defendant Workman. It is as if Plaintiffs' first notion of penciling in Defendant Workman as a defendant in this case (and perhaps Plaintiff Denise Osborne as well) occurred moments before handing their Complaint to the court clerk for filing. As with their § 1983 claim, Plaintiffs incorporate preceding paragraphs, but that device does not serve

---

[5] Although the Court decides these issues on their merits, a number of federal courts have declared that a motion to dismiss may be properly granted without reaching the merits on the grounds that the plaintiff's failure to respond operates as a concession that the motion should be granted, or that dismissal is appropriate as a sanction for failure to prosecute or to obey the court's orders. *Anderson v. Greene*, 2005 WL 1971116, *2 (S.D. Ala. Aug.16, 2005). *See, e.g., Fox v. American Airlines, Inc.*, 389 F.3d 1291, 1294-1295 (D.C. Cir.2004) (finding no error where district court granted motion to dismiss based on reasoning that plaintiffs' failure to respond to motion within prescribed time renders motion conceded); *Pomerleau v. West Springfield Public Schools*, 362 F.3d 143, 145 (1st Cir. 2004) (citing authority for proposition that court may treat failure to respond to motion to dismiss as procedural default where court had ordered response, unless granting motion would offend equity or conflict with federal rules); *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir.1991) (noting that if a party represented by counsel fails to respond to a motion to dismiss, a court may treat the motion as unopposed and subject to dismissal without conducting a merits analysis).

to otherwise meet the general pleading requirements under *Twombly* and *Iqbal* where, as in their § 1983 claim, Plaintiffs fail to link essential facts with the legal elements of the cause of action.

Accordingly, the Court **GRANTS** Defendant Workman's motion to dismiss Claim Two as that Claim relates to him.

### IV. CONCLUSION

For foregoing reasons, the Court **GRANTS** Defendant Workman's motion to dismiss [Docket 8.]

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 13, 2012

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE